UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| V. | ) | No. 2:10-CR-84 |
| | ) | |
| AARON KINZER, *ET AL.* | ) | |

**REPORT AND RECOMMENDATION**

On October 15, 2009, a judge of the General Sessions Court for Sullivan County, Tennessee, issued warrants to search defendant's business at 305 Beechwood Drive in Bristol and his residence at 251 Basham Hill Road in Bristol. Detective Ray Hayes was the applicant/affiant for the warrant to search the business, and Detective Jason Hite was the applicant/affiant regarding the warrant to search the defendant's residence.

Each warrant authorized the executing officer to search for controlled substances, (including, but not limited to marijuana), drug paraphernalia, and other evidence relating to illegal drug trafficking.

The inventory filed with respect to each warrant reveals that evidence of drug trafficking was found and seized at both locations.

The defendant has filed a motion to suppress all evidence seized pursuant to those warrants. (Doc. 81). This motion has been referred to the magistrate judge pursuant to the standing order of this Court and 28 U.S.C. § 636. A hearing was held on March 2, 2011.

Defendant argues that (1) the applicants/affiants misstated facts within their affidavits;

(2) the warrants were overly-broad; and (3) the affidavits failed to state sufficient probable cause because the factual recitations in the affidavits were stale.

## *MISSTATED FACTS WITHIN THE AFFIDAVITS*

On page 2 of Detective Hayes' affidavit filed in support of his application to search defendant's business, he states:

> Your Affiant has previously executed a valid search warrant of [defendant's] residence at 251 Basham Hill Road, Bristol, Tn, on June 6, 2009. During that search of the residence, marijuana packaged for resale, drug paraphernalia, and money were found in the residence. This search warrant was based on the observations of an independent, reliable confidential informant who observed [defendant] to be in possession of a large amount of Marijuana for resale in his residence.

Defendant argues that this statement was false; he says that the amount of marijuana seized from his residence on that prior occasion was only a "personal use amount," not a "large amount for resale."

On page 5 of Detective Hite's affidavit filed in support of his application to search defendant's residence, he states:

> A check of [defendant's] criminal history through National Crime Information Center database shows previous convictions for Trafficking in Illegal Narcotics in the State of Georgia, numerous convictions for the sale and illegal possession of cocaine and marijuana in the state of Virginia.

Defendant recites in his motion that Hite's assertion "is proportionately inaccurate and a misrepresentation to procure the search warrant."

> [W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant

2

>affidavit, *and if the allegedly false statement is necessary to a finding of probable cause*, the Fourth Amendment requires that a hearing be held at the defendant's request

*Franks v. Delaware*, 438 U.S. 154, 155 (1978) (italics supplied).

It is extremely doubtful that defendant has made the requisite preliminary showing that either of these statements was false, much less that the affiants knew them to be false. In the course of argument on defendant's motion, counsel requested additional time to review certain other discovery and later request a *Franks* hearing if she deemed necessary. However, there will be no need for a *Franks* hearing under any circumstance since the excision of those statement which defendant claims to be false still leaves an abundance of probable cause in both affidavits; no *Franks* hearing is required if the "false" information is excluded and probable cause still remains. *Franks*, 438 U.S. at 155-56.

In the affidavit that supports the search warrant for defendant's residence, Detective Hayes describes in some detail the preparation and execution of "controlled buys" of illegal drugs: an informant is procured to buy the drugs from the suspect; that informant is searched to ensure that he has no drugs or money upon him prior to the controlled buy; the officer gives the informant some money and observes the informant travel to the location where the controlled buy is to take place; the officer continues to watch the location until the informant reappears, and continues to observe the informant until the officer and informant meet; the officer retrieves the illegal drugs from the informant which he purchased from the suspect, and the informant is again searched.

Hayes then describes a controlled buy that occurred from defendant at his business

in early September 2009, and he again describes how the informant was searched prior to the buy, kept under observation at all times, and then searched after the buy. On that occasion the informant procured a baggie of "green leafy material" which Hayes recognized to be marijuana.

In late September 2009, another controlled buy was orchestrated and occurred at defendant's business, and the same precise procedure was utilized, and again the informant procured marijuana from defendant.

The identity or "reliability" of the informant is a non-issue under these circumstances. All that matters is that an individual, *under the direct and constant observation of the police*, purchased marijuana from defendant in his business premises on two occasions in September 2009. A well-trained dog would have served the same purpose and the probable cause would have been no less.

These two controlled buys, standing alone, constituted adequate probable cause to believe that evidence of illegal drug trafficking would be found in defendant's business, bearing in mind that the warrants were applied for, and issued, no more than two or three weeks after the last of these controlled buys.

The analysis of Hite's affidavit filed in support of the warrant to search defendant's residence is essentially identical. Defendant asserts that Hite's statement that defendant has previous convictions in Georgia, and numerous convictions for the sale and illegal possession of cocaine and marijuana in Virginia, were proportionately inaccurate. The court is unsure what counsel means by "proportionately inaccurate," but for purposes of this report and

4

recommendation, it will be assumed that those statements were outright falsehoods.[1]

Detective Hite, as did Detective Hayes in his affidavit, described in much detail the procedure generally utilized in arranging controlled buys of narcotics. He then specifically describes a controlled buy of marijuana from defendant at his residence within the preceding month, i.e., September. He also describes another controlled buy within the preceding month from defendant at his business. However, this controlled buy was first arranged between the informant and the defendant in a *monitored* phone call placed to defendant at his residence.

The controlled buy of marijuana from defendant at his residence, without more, establishes probable cause to believe that evidence of drug trafficking would be found there. Moreover, the controlled buy from defendant at his business also establishes probable cause to believe that evidence of drug trafficking would be found at defendant's residence. In this regard, on page 5 of the affidavit, Hite states that it has been his experience that drug dealers often maintain records regarding their drug trafficking in their *residence*, business, and on their person. Detective Hite's experience in this regard is confirmed by no less than the Sixth Circuit Court of Appeals: "In the case of drug dealers, evidence is likely to be found where the dealers live." *United States v. Davidson*, 936 F.2d 856 (6th Cir. 1991); *United States v. Goward*, 2006 WL 1952282 (6th Cir. 2006).

---

[1]Based upon the United States' response and accompanying exhibits regarding defendant's criminal history, these statements were quite true; nevertheless, solely for purposes of this report and recommendation, they are assumed to be false.

Therefore, excising from Hite's affidavit all of the "offending" verbiage regarding defendant's convictions, there remains ample probable cause to support the issuance of a search warrant.

No *Franks* hearing is necessary, nor will one be granted, for the reasons stated above.

## *THE BREADTH OF THE WARRANTS*

The Fourth Amendment requires that search warrants particularly describe the place to be searched. This is, of course, the so-called "particularity requirement" of the Fourth Amendment. *See, Andresen v. Maryland*, 427 U.S. 463 (1976). The items to be seized pursuant to a warrant must be described with sufficient particularity to prevent the executing officer from seizing anything and everything that might constitute evidence of criminal activity. *See, e.g., Coolidge v. New Hampshire*, 403 U.S. 443 (1971). In other words, the warrant may not be so broad as to allow the officer to have essentially unbridled discretion to generally rummage through the defendant's property. Nevertheless, the Sixth Circuit has held that a warrant must be only "as specific as the circumstances and the nature of the activity under investigation permit." *United States v. Henson*, 848 F.2d 1374, 1383 (6th Cir. 1988).

The warrant for the business and the warrant for the residence were identical. The warrants authorized the officers to search for and seize:

> 1) Any and all controlled substances to include but not limited to Marijuana.
> 2) all Drug Paraphernalia, to include any and all items used in

conjunction with the packaging, and the sale of Marijuana and/or other controlled substances.

3) Books, records, receipts, notes, ledgers and other papers relating to the transportation, ordering, purchase and distribution of controlled substances.

4) Books, records, invoices, receipts, bank statements, and related records, certificates of deposit, passbooks, money drafts, letters of credit, money orders, bank drafts, cashier's checks, bank and other items evidencing the obtaining, secreting, transfer and/or concealment of assets expenditure of moneys illegally obtained through the distribution of narcotics and also monies used in drug purchases at the residence.

5) Address and/or telephone books, written or typed by hand as opposed to printed, rolodex indexes and nay papers reflecting names, addresses, telephone numbers, fax numbers and/or telex numbers or co-conspirators, sources of supply or customers.

6) Indicia of occupancy, residence, rental and/or ownership of the premises described herein including, but not limited to purchase or lease agreements, and keys.

7) Any and all firearms including handguns, pistols, revolvers, shotguns, rifles, and other weapons.

8) Electronic Data Storage devices, computer data storage diskettes or CD-ROMs, or any other electronic equipment capable of storing, retrieving, and /or accessing data or necessary to assist in the accessing of said electronic data pertinent to the investigation.

9) Surveillance cameras and personal computer.

Items 1 and 2 – illegal drugs and drug paraphernalia, and packaging material – needs no discussion; obviously, that is quite specific.

Item 3 – books records, etc., relating to the sale of illegal drugs – also is as specific as possible with respect to illegal drug transactions. Item 8, concerning electronic data storage devices, etc., is reasonably specific, bearing in mind that many records (if not most records) in this day and time are kept electronically.

Item 5 – which authorizes the officer to search for and seize address, books, roldex indexes and any other documents containing the names of potential drug customers – is

7

reasonably specific.

Item 6 – indicia of occupancy or ownership of the premises – is specific enough, and leaves no real discretion to the executing officer.

And Item 7 – directing the officers to seize firearms, -- likewise is extremely specific.

The judge's warrants were not overly-broad.

## *PROBABLE CAUSE*

Defendant argues that the information in the affidavits was stale and therefore could not constitute probable cause. An affidavit filed in support of a search warrant must establish probable cause to believe that evidence of criminal activity will be found at the place to be searched. Depending upon the circumstances, the information can be so old that the issuing judge could not reasonably conclude that evidence of criminal activity would still be found at the place to be searched. However, there is no bright-line test to determine if information in an affidavit is timely enough, or too stale, to establish probable cause; rather, staleness is determined by the nature of the crime, the criminal, the place to be searched, and the thing to be seized. *United States v. Spikes*, 158 F.3d 913, 923-24 (6th Cir. 1998).

Reference is made to the discussion contained within the heading "Misstated Facts Within The Affidavits" in the first part of this report and recommendation. There is no need to repeat that discussion; suffice it to say, both affidavits, with or without the "false" information, state ample probable cause to support the issuance of the warrants. The two warrants were issued on October 15, 2009. The various controlled buys as described in the supporting affidavits were accomplished in September, a matter of a few weeks earlier. No

one could reasonably argue that this information was stale.

*CONCLUSION*

It is respectfully recommended that defendant's motion to suppress, (Doc. 81), be denied.[2]

Respectfully submitted,

s/ Dennis H. Inman<br>United States Magistrate Judge

---

[2] Any objections to this report and recommendation must be filed within fourteen (14) days of its service or further appeal will be waived. 28 U.S.C. § 636(b)(1).